### J. G. FERGUSON ET AL. v. R. W. JOHNSON.
#### No. 664.

**1. Land Certificate—Inheritance Where Grant is Based on Mexican Law—Aliens.**

W. removed from the United States to Texas, then a part of Mexico, in 1831, and died here in 1834. After Texas became a Republic, it issued, on the application of her administrator, a certificate to lands which were patented in her name in 1841. Held, that in the absence of proof to the contrary, it will be presumed that the certificate issued by virtue of the right thereto which W. had acquired under the Mexican colonization law, and that her heirship, as to the land, was to be determined by the laws anterior to the Constitution of the Republic, under which aliens could not inherit.

**2. Descent—Citizenship of Mexico—Evidence Insufficient.**

Evidence that one born in the United States of parents who were citizens thereof came to Texas, then a part of Mexico, with his widowed mother in 1831, left Texas in 1835, was married in Louisiana, and again lived in Texas in 1859 to 1863, does not show that he acquired citizenship in Mexico, and was not as to the Mexican law an alien at the date of his mother's death in 1834.

APPEAL from McMullen. Tried below before Hon. M. F. LOWE.

*A. M. Monteith, D. R. Pendleton,* and *F. H. Burmeister,* for appellants.—The certificate for a league and labor of land was issued dur-

ing the existence of the Republic of Texas, to Nancy Wright, the mother of James Wright, and ancestor of plaintiffs, as a resident of the Republic of Texas, although she had died when Texas was a part of Mexico. In this case the validity of the certificate and patent not having been questioned by the Republic or State of Texas, it is valid as between those who were then her heirs, and descent was cast, not of the date of the death of Nancy Wright, but at the date of the issuance of certificate establishing her right as a resident of Texas, at the date as late as the Declaration of Independence of Texas; and the Constitution of the Republic permitted her children or heirs to inherit her estate, and those who were aliens were given a reasonable time to take possession and dispose of the same. In this case there has been no act of forfeiture, and by the admission of Texas, those residing in other States were no longer aliens. Constitution of Republic of Texas, General Provisions, sec. 10; Hart. Dig., arts. 585, 600; Cryer v. Andrews, 11 Texas, 170; Barclay v. Cameron, 25 Texas, 240; Barrott v. Kelley, 31 Texas, 483; Pettus & Lott v. Dawson, 82 Texas, 21, Russell v. Bales, 1 Texas Civ. App., 609; Ralston v. Skerritt, 82 Texas, 486.

Beasley & Flournoy, for appellee.—1. As to this land, descent was cast on the heirs of Nancy Wright, at the time of her death, if at all, and not at the time the certificate was issued, and such descent was regulated and governed by the laws in force at the time of such death, and not by the laws in force at the time of the issuance of said certificate. Hornsby v. Bacon, 20 Texas, 556; Blythe v. Esterling, 20 Texas, 565; 69 Texas, 395; 52 Texas, 375; Barclay v. Cameron, 25 Texas, 233; Pettus v. Dawson, 82 Texas, 21.

2. The burden being on plaintiffs to show that David Wright had legal capacity to inherit from Nancy Wright, and the jury having found adversely thereto, its verdict should not be disturbed by this court unless an inspection of the record shows that it was clearly contrary to the evidence. Clark v. Hills, 67 Texas, 141; 41 Texas, 283; 69 Texas, 560.

JAMES, CHIEF JUSTICE.—The land in controversy was patented to Nancy Wright in 1841. Nancy Wright was a native of North Carolina, where she married. Her husband, Archibald Wright, died in 1816. They had a number of children, among them sons named James and David Wright.

In 1831 Nancy Wright came to Texas from Mississippi, accompanied by her said two sons, the former bringing his family with him, the latter being single. They remained in Texas, where the mother died in 1834. In 1835 David left the country "when the war broke out." He married in Louisiana. The only other testimony relative to him is that from 1859 to 1863 he was living with his family in Bell County, Texas, where he died in the latter year. The evidence is that none

of the other children of Nancy Wright had come to Texas prior to her death, or for many years afterwards.

In 1837 James Wright became administrator of Nancy Wright's estate and applied for and obtained a headright certificate for a league and labor which was issued to said Nancy Wright, by virtue of which the half league and labor in question was located.

The defendant Johnson holds by deeds from the heirs of James Wright. Plaintiffs are the heirs of several of the brothers and sisters of James Wright, and among them are the heirs of said David Wright. The age of David Wright when he came to Texas does not appear.

These facts are all that are necessary in connection with the conclusions of law by which we dispose of the case.

*Conclusions of law.* —A copy, or the substance of the certificate under which the land was patented, is nowhere indicated in the record. We are therefore without the means of adopting appellants' view, that the Republic of Texas granted the land on the theory that Nancy Wright was a resident of Texas on March 2, 1836, the date of the Declaration of Independence.

It is uncontradicted that Nancy Wright, then a widow, came from Mississippi to Texas, in 1831, with an unmarried son, David Wright, and another son, James Wright, who had his family with him, and that she remained in Texas, and died there in 1834. That the colonization laws of Mexico, and her conditions, were such as admitted of her becoming entitled to a grant of land from the Mexican government, as head of a family, is clear. Sayles' Early Laws, art. 58; Republic v. Inglish, Dallam, 608. That such inchoate rights could under certain circumstances be recognized and developed into a grant from the Republic of Texas, is equally clear. 1 Paschal's Digest, art. 4140; sec. 10, of General Provisions, Constitution of 1836. The case of Hornsby v. Bacon, 20 Texas, 559, was similar to this one. Hornsby, a single man, died in 1835, and a certificate for one-third of a league and a patent were issued by the Republic to his heirs. It was held that the heirship was to be determined by the laws anterior to the Constitution of the Republic, and the plaintiffs, having been aliens at the time descent was cast by the death of Hornsby in 1835, they did not inherit. The court in that case must have assumed that the grant was made by the Republic by virtue of a right to the land which Hornsby had under the Mexican laws. It seems to us that, in the absence of any testimony to the contrary, such is the law of this case. The certificate and patent to the land in question were to Nancy Wright, who had died in 1834, and unless there is evidence to negative the presumption that it was issued in conformity with law, that is to say, by virtue of a right she had acquired, the jury would not have been justified in finding that it was granted on the ground that she was a resident of Texas on March 2, 1836. A palpable fraud would have been practiced to secure the patent on the ground last stated, which

can not be presumed, and which it certainly would be improper to presume if there might have been a state of facts upon which it could have issued lawfully.

Under the testimony and the authority of the opinion in Hornsby v. Bacon, we hold that, so far as the verdict is in conformity with the principle that descent was cast as of the date of Nancy Wright's death, and that her descendants who were aliens at that time did not inherit from her, it is correct. Yates v. Iams, 10 Texas, 168; Blythe v. Easterling, 10 Texas, 565.

It is not material to consider the status of James Wright as to his capacity to inherit, as defendant held under him; but it was a material inquiry whether or not any of the plaintiffs or their ancestors inherited from Nancy Wright, inasmuch as it was necessary for them, or some of them, to affirmatively show title in order to warrant a recovery. Appellants contend that there was evidence sufficient to prove that David Wright, under whom some of the plaintiffs claim, was not an alien at the time of his mother's death.

He was born in the United States of parents who were citizens of that country, and came to Texas with his mother in 1831. He left Texas in 1835. He married in Louisiana—the date not being given, but presumably after he left Mexico in 1835. This is substantially all that the record states on the subject. To our mind this testimony was not sufficient to prove that his status had been changed from that of a foreigner to that of a person domiciliated in or a citizen of Mexico. Holloman v. Peebles, 1 Texas, 673; Clay v. Clay, 26 Texas, 24; secs. 6 and 7, art. 116, Sayles' Early Laws, also art. 47, sec. 3; Yates v. Iams, supra.

The next question to be disposed of is whether or not it devolved on the defendant to show that David Wright had not taken the steps necessary to constitute him a person domiciliated in or a citizen of Mexico. In other words, can it be inferred from his residence there with his mother, for the period of four years, at the end of which time, after her death, he abandoned the country, that his original citizenship or status of foreigner had been changed to citizenship in that country? We think not. His mere residence there was as consistent with the relation of a foreigner as that of a citizen. The evidence seems to allow of but one reasonable conclusion, viz., that he was and remained an alien. Where it appeared that he was a foreigner on arrival, it was incumbent on plaintiffs to prove that he acquired capacity to inherit.

Appellants assert that, inasmuch as the grant of land was to Nancy Wright as the head of a family, her son David being the other constituent of the family, the latter would be entitled to an undivided half thereof in his own right; citing Sayles' Real Est. Laws of Texas, art. 58, and cases cited, which we find neither support nor bear on the proposition, and, in our opinion, it is without merit.

It follows from what precedes that the verdict was the only correct

one that could have been rendered. This conclusion dispenses with our considering the other alleged errors, which are rendered immaterial.

The judgment is affirmed.

*Affirmed.*

Delivered October 30, 1895.

### ON MOTION FOR REHEARING.

JAMES, CHIEF JUSTICE.—In reference to the point made in the first paragraph of the motion for rehearing,—that Nancy Wright being entitled to but one league of land from the Mexican government, the grant by the Republic to her of a league and labor conclusively shows that the latter grant had no reference to her right acquired under the colonization laws of Mexico,—we are of opinion that such fact does not justify the conclusion contended for. Her right as a colonist in Mexico was to a headright as the head of a family, and the grant by the Republic was for such a headright, and it was natural for the certificate to be for the quantity of land it allowed in such cases. The fact mentioned does not, in our opinion, affect the applicability of the rule in Hornsby v. Bacon

The motion will be overruled.

*Overruled.*

Delivered December 11, 1895.

Writ of error refused.